SO ORDERED: December 14, 2020.



Robyn L. Moberly
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| IN RE: | ) | |
|---|---|---|
| | ) | |
| CLINT FULLER | ) | CASE NO. 18-00681-RLM-7A |
| | ) | |
| Debtor | ) | |
| | ) | |

### ORDER GRANTING DEBTOR'S AMENDED MOTION
### FOR RELIEF FROM ORDER

This matter came before the Court on November 9, 2020 upon the debtor's motion for relief from this Court's April 9, 2020 order that set aside the chapter 7 trustee's previous abandonment of all scheduled assets, including a products liability claim concerning the drug Abilify ("the Abilify Claim"). The Court finds that the debtor's motion should be granted and that this Court's order of April 9, 2020 setting aside the Rule 6007 notice of abandonment of the Abilify Claim should itself be set aside.

1

*Background*

The debtor filed this chapter 7 case on February 9, 2018. In his Schedule A/B, question 30, under "other amount someone owes you" he disclosed that "debtor has a pending class action lawsuit against Abilify" and "debtor has a potential Cause of Action against VOA". Each of these claims was valued $0.00. In the §341 meeting of creditors held on March 9, 2018, the debtor's attorney indicated that the debtor has assigned a value of $0 to the Abilify claim because it was part of a class action. It was also disclosed at that meeting that the debtor had sold his interest in certain oil wells pre-petition for $315,000 and that he "gambled away" most of those proceeds. The chapter 7 trustee's ("trustee") broad inquiry of the debtor included the sale of the oil well rights and the Abilify and VOA causes of action, as will be discussed in greater detail below.

The trustee conducted a Rule 2004 examination of the debtor and moved for employment of an accountant in part to "perform forensic audit on all Debtor's financial information". (Application to employ. ECF #19, ¶2). The trustee filed his "report of possible assets" indicating the only asset he sought to administer was the debtor's nonexempt interest in the oil wells. The clerk of the court followed up with the following notice:

### NOTICE OF POSSIBLE ASSETS, ABANDONMENT, AND LAST DAY TO FILE CLAIMS

A Report of Possible Assets and Abandonment of Property was filed on September 26, 2018, by Trustee Paul D. Gresk.

NOTICE IS GIVEN that all scheduled assets will be abandoned from the estate except Debtors nonexempt interest in oil wells. Any objection to the proposed abandonment of property must be filed with the Court by October 10, 2018. Objections should comply with S.D.Ind. B−9013−1(d) and must be served on the trustee. If no objections are filed, the abandonment of property becomes effective after October 10, 2018.

2

NOTICE IS FURTHER GIVEN that assets, not abandoned from the estate, may be used to pay a dividend to creditors. Creditors must file a claim by December 26, 2018 in order to share in any distribution from the estate. Instructions to obtain a proof a claim form or to file electronically can be found at www.insb.uscourts.gov/filing_claims.html. A proof of claim form can also be obtained from any bankruptcy clerk's office.

The proposed abandonment drew no objection. The court, as is routine, did not issue a specific order of abandonment. The two interim financial reports filed by the trustee – both after October 10, 2018- showed the estate's interest in the oil wells as "fully administered" but did not show the Abilify and VOA claims as abandoned but instead valued them at $20,000 and $10,000 respectively. Then, on November 13, 2018, the trustee issued his report of no distribution, indicating that there was no property available for distribution from the estate, stating that the debtor's estate has been fully administered, and requesting that he be discharged from further duties as trustee. About two weeks later, the clerk placed the following notation on the docket, " Pursuant to Local Rule S.D.Ind. B-6007-1, all property of the estate listed in the schedules filed by the debtor(s) has been abandoned." It is that notation that the trustee succeeded in setting aside on April 9, 2020. Contemporaneous to that docket notation was a further docket entry noting the entry of a final decree and that "the estate of the debtor has been fully administered." The case was thereafter closed.

The Abilify Claim alleged that a side effect of the drug was to exacerbate compulsive behavior in patients already being treated for depression. The debtor continued to pursue that claim post-discharge. A settlement in the class action was reached in March 2020 and the debtor's share exceeded $229,000. The trustee then moved to reopen the case to administer this settlement which he incorrectly termed in his motion to reopen as an "undisclosed asset". The case was reopened on March 19, 2020. The trustee then moved to set aside the prior Rule 6007 abandonment notice on the docket to which objections were due by April 7, 2020 (the "trustee's motion to set aside abandonment"). No objection was filed and the Court granted the motion on April 9, 2020. Finally, the trustee completed the process and issued a

3

new notice of possible assets, designating the "Debtor's interest in a product liability claim" as an asset.

The debtor has moved to set aside the Court's April 9th order which sets aside the prior abandonment notice (the "debtor's Rule 9024 motion"). At the hearing held on November 9, 2020, there was ambivalent and conflicting evidence on the extent of the testimony at the §341 meeting about the class action claim and the Court asked the parties to obtain a recording of the §341 meeting. The parties have provided the Court with an audio file of that meeting. The trustee filed a formal written objection to the debtor's Rule 9024 motion after the hearing (the "trustee's objection").

## *Discussion*

### Motion to Set Aside Order under Fed. R. Bankr. P. 9024

This debtor's motion is cast in the peculiar procedure posture of seeking to set aside an order which sets aside abandonment of assets pursuant to a notice. Fed. R. Bankr. P. 9024 is the bankruptcy equivalent of Fed. R. Civ. P. 60. Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" based on these limited reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it was based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

The debtor's Rule 9024 motion seeks relief from the April 9th order and the debtor bears the burden of proving that (1) there is good cause for his failure to timely object to the trustee's motion to set aside abandonment; (2) the debtor took quick

4

action in filing his Rule 9024 motion and (3) he has a meritorious defense. *Matter of James*, Case No. 18-11120, 2018 WL 8223414 at *1 (Bankr. N. D. Ind. August 6, 2018). The Court has wide discretion in deciding such motions. *Id.*

Neither the debtor nor the trustee addressed these three threshold requirements or whether the debtor is entitled to relief under one of the six limited reasons under rule 9024. The trustee's motion to set aside abandonment referred to a "product liability claim" that was an "undisclosed asset" when in fact that motion pertained to what was regularly and more specifically referred to as the Abilify Claim which the debtor disclosed in his schedules. In other words, it was not clear from the trustee's motion to set aside the abandonment that the trustee sought abandonment of a disclosed asset. Once the April 9th order on that motion was entered, the trustee proceeded to employ special counsel. The debtor initially filed his Rule 9024 motion about five months after the April 9th order was entered, but only one month after the entry approving special counsel's employment. Review of the pertinent case law as discussed below reveals that the debtor has a meritorious defense. The court finds that the debtor has met the three threshold requirements. It further finds, based on the reasons below, that the debtor has met his burden and has shown why the April 9th order should be set aside under Rule 60(b)(6).

## Section 554

Section 554 of the bankruptcy code governs abandonment of estate property. The first two subsections, Sections 554(a) and (b), involve a trustee's or a party in interest's request to abandon specific property. The last two subsections, Sections 554(c) and (d), deal with property that has not been abandoned from the estate and has not been administered during the case. If such property has been scheduled, it is automatically abandoned upon the closing of the case, e.g. a "technical" abandonment, under §554(c). *In re DeGroot*, 484 B.R. 311, 319 (B.A.P. 6th Cir. 2012). If such property has not been scheduled, it remains property of the estate under §554(d) Both §554(c) and §554(d) begin with the qualifying phrase "unless the court orders otherwise", and thus, a court in its discretion can "order otherwise"

5

and alter the provisions of §554(c) and (d) if the circumstances permit. Neither §554(a) nor (b) contain any such qualifying language.

The trustee is mistaken that the facts here fall under §554 (c), as he asserts in his objection. Fed. R. Bankr. P. 6007 provides the procedure by which a *trustee* can abandon property under *§554(a):*

> (a) Notice of proposed abandonment or disposition; objections; hearing. Unless otherwise directed by the court, the trustee ... *shall* give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, .... a party in interest may file and serve an objection within 14 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entitles as the court may direct. (Emphasis added)

> This is the precise procedure employed by the clerk's notice that was issued after the trustee issued his report of possible assets. Admittedly, there is no signed order abandoning all property but the interest in oil wells, but Rule 6007 does not require it. Section 554(a) merely requires an affirmative act by the trustee to abandon property with opportunity to be heard upon the filing of an objection. See, *In re Ordonez*, No. 10-37596, 2017 WL 4877242 at *3 (Bankr. D. Utah October 27, 2017) (§554(a) requires notice to creditors and an opportunity for hearing); *In re Pioch*, No. 08-61473, 2010 WL 3701593 at *2 (Bankr. E.D. Mich. September 1, 2010)(abandonment under §554(a) occurs by way of some affirmative act before the case is fully administered and closed.)

The notice of abandonment clearly indicated that the trustee intended to abandon all property that was scheduled other than the debtor's interest in oil wells. It further made clear that such property would be abandoned after October 10, 2018 in the absence of an objection. The Abilify Claim was scheduled on Schedule A/B and was abandoned as of October 11, 2018 pursuant to §554(a), and not under the "technical" abandonment provision of §554(c). [1]

---

[1] Although not an issue in this case, courts differ as to what constitutes "property scheduled" for §554(c) purposes. While some courts hold that disclosure of a cause of action in the SOFA is sufficient, others hold that "scheduled" specifically refers to disclosure on the debtor's schedules, and

6

### Revocation of Abandonment of Assets

Abandonment constitutes a divesture of all of the estate's interests in the property. The property abandoned reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed. *In re Dewsnup* 908 F.2d 588, 590 (10th Cir. 1990), *aff'd sub nom. Dewsnup v. Timm* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) ("Property abandoned under this section ceases to be part of the estate. ... It reverts to the debtor and stands as if no bankruptcy petition was filed."); *In re Wilton Armetale, Inc.* 618 B.R. 424, 436 (Bankr. E.D. Pa. 2020). As a result, the debtor enjoys the same claim to and interest in the property abandoned as was held before the bankruptcy filing. *In re Eurogas, Inc.,* 560 B.R. 574, 586, n.21 (Bankr. D. Utah, 2016).

Because abandonment takes the property out of the estate and revests it in the debtor, the revocation of abandonment of an asset is not taken lightly. Abandonment of assets pursuant to a notice of abandonment under §554(a) or (b) is generally considered "strictly" irrevocable. *In re Woods,* 173 F.3d 770, 778 (10th Cir.1999) (citing *In re Gibson,* 218 B.R. 900, 904 (Bankr.E.D.Ark.1997)); *In re Blout*, Case No. 14-21449 (JNP); 2020 WL 6779333 at *7, (Bankr. D. N. J. November 17, 2020); see also, *In re Reilly*, Case No. 12-3171 (MAS), 2013 WL 135179 at *4 (D.N.J. January 8, 2013) (where the district court noted that abandonment under §554(a) and (b) was "strictly" irrevocable, but that that a "technical" abandonment under §554(c) was subject the less strict, "rebuttable presumption" standard since a technical abandonment may occur inadvertently as an automatic consequence of a premature case closing.)

A narrow exception to this "strictly irrevocable" rule exists where the trustee is given incomplete or false information, thereby foregoing a proper investigation of

---

disclosure only on the SOFA does not suffice. See, *In re Tadayon*, BAP No. NV-18-1119-BkuTa, 2019 WL 1923044 at *5 (B.A.P. 9th Cir. April 29, 2019) and cases cited therein..

the asset. *Catalano v. Commissioner,* 279 F.3d 682, 686 (9th Cir.2002); *In re Lusher*, Case No. 18-71772, 2019 WL 4553432 at * 3 (Bankr. C. D. Ill. September 19, 2019). While §521(a)(1)(B)(i) requires a debtor to file a schedule of assets, neither that section nor any other bankruptcy code section gives guidance on how specific the asset description must be. Courts have determined that an asset is adequately scheduled if it is described with "reasonable particularization under the circumstances". *In re Furlong*, 660 F.3d 81, 87 (1st Cir. 2011). The description must be sufficient to enable the trustee to determine whether to investigate further. *Id.* If the description of the asset does not put the trustee on notice to inquire further, abandonment will be revoked. See, for example, *In re Slates,* No. EC-12-1168-KiDJu, 2012 WL 5359489 at *9 (B.A.P. 9th Cir. October 31, 2012) (where court determined that debtor's state court actions for discrimination had not been abandoned and remained property of the estate because the debtor's schedules referred to them as "possible disability benefits" which implied that they were exempt); *In re Suplinskas ,* 252 B.R. 293, 296 (Bankr. D. Conn. 2000) (debtor's claim for fraud against third parties who sold debtor a partnership interest was not abandoned and remained property of the estate where debtor merely scheduled his ownership of the partnership interest). But see, *In re Quigley,* 584 B.R. 820, 823 (Bankr. W.D. Tex. 2017) (case not reopened and abandonment not revoked where debtor disclosed his interest in an LLC that owned a trademark but failed to disclose LLC's license agreement for use of the trademark; court found that "the essential facts were disclosed and discussed at the meeting of creditors").

    A description is not misleading if the scheduled asset appreciates and it is discovered that it is worth more than the scheduled value. *In re Adair*, 253 B.R. 85, 89 (B.A.P. 9th Cir. 2000)(where abandonment of personal injury claim was not revoked even though debtor scheduled its value as "unknown" and letter from debtor's personal injury attorney described recovery as "speculative at best"); *Furlong,* 660 F.3d at 83-87 (abandonment not revoked where breach of contract claim and 100% interest in corporation scheduled as having an "indeterminate" and

8

"unknown" value respectively; court determined that descriptions were sufficient to put the trustee on inquiry notice and further found that "the Bankruptcy Code does not require every component of a cause of action to be spelled out on a debtor's schedule"). Ultimately, a court should focus on whether the trustee knew of the asset and had the opportunity to investigate it prior to closing the case. *Adair*, 253 B.R. at 89-91.

The trustee argues that the debtor "failed to disclose important material facts" surrounding the Abilify Claim such as the fact that he had retained attorneys to represent him as principal lead in the class action. (Tr. Objection, ECF #62, ¶10(a)). While it was disclosed at the §341 meeting that the lawsuit primarily dealt with Abilify's side effects that exacerbated compulsive behavior, the trustee's objection asserts that the personal injury attorney's retention was for claims based on several other legal theories, including bodily injury, pain and suffering, and damages for economic losses incurred by loss of ability to work, loss of earning, and aggravation of previously existing conditions and that the debtor's description did not adequately cover these claims. The trustee also complains that the debtor failed to disclose the personal injury attorney's representation agreement on Schedule G.

The Court first notes that the debtor was not required to disclose on his schedules every aspect of the Abilify Claim. *Furlong,* 660 F.3d at 83-87. The debtor was obligated to provide a description sufficient to put the trustee on inquiry notice to further investigate the claim. The debtor met this standard as is evident from the proceedings at the §341 meeting. Discussion at the §341 meeting concentrated on the debtor's sale of his interests in oil wells for $315,000 and the Abilify Claim. The debtor's attorney explained that the Abilify Claim had been valued at $0 as they did not have a number yet due to the fact that the claim was part of a class claim. The debtor's attorney also explained that the lawsuit involved the side effects of the drug upon patients already being treated for depression. The trustee asked for the names of the two doctors that had treated the debtor since 2013. The trustee even directed one of his employees participating in the §341 meeting to

9

search the internet for the side effects of Abilify. He also mentioned that he would ask for a release of the debtor's medical records. He also asked the debtor's attorney to provide the name of the law firm that was handling the class action. There was some discussion of the VOA claim, [2] but it was evident from the proceeding that the trustee going forward would concentrate on the sale of the debtor's interest in oil wells and the Abilify Claim. The extent of the trustee's inquiry into the Abilify Claim, his requests for a medical record release and additional information substantiates the fact that the claim was scheduled adequately enough to put him on inquiry notice. The Abilify Claim was adequately scheduled and was abandoned effective October 11, 2018 pursuant to the notice of possible assets and definitely by the later Rule 6007 notation of abandonment on the docket. The trustee's later mention of the Abilify Claim on his interim reports without a "fully administered" designation cannot avoid the fact that the Abilify Claim was abandoned by operation of the notice of possible assets. See, *In re Wright,* 566 B.R. 457 (B.A.P.6th Cir. 2017) (court affirmed denial of revocation of abandonment of personal injury claim despite trustee's notation on report of no distribution that claim was preserved). The debtor has met his burden under Fed. R. Bankr. P. 9024. The abandonment of the Abilify Claim should not have been revoked. [3]

The court's conclusion is further supported by two important bankruptcy policies. First, there is a "strong policy of finality" that "should be respected" in bankruptcy cases as it was Congress' intent that debtors and creditors "be subject to the jurisdiction of the bankruptcy court for a limited time" and that the filing of a bankruptcy petition does not start a "never ending process in bankruptcy court". *In re Reiman,*431 B.R. 901, 913 (Bankr. E. D. Mich. 2010); *In re Brinley,* 347 B.R. 613,

---

[2] From the §341 meeting audio tape, it appears that this claim is for damages caused by VOA's negligence in its operation of a group home in which the debtor stayed for three months.

[3] Courts have denied a trustee's request to revoke abandonment of a personal injury claim that later settles for a sum greater than anticipated, even under the more lax "rebuttable presumption" standard employed in revoking §554(c) "technical" abandonments. See, *In re Morris*, Case No. 8-36702, 2018 WL 1321343 (Bankr. N.D. Ohio March 13, 2018); *In re Sas*, 488 B.R. 178 (Bankr. D. Nev. 2013); *In re Ozer*, 208 B.R. 630 (Bankr. E.D.N.Y. 1997).

619 (Bankr. W.D. Ky. 2006), *affm'd* 547 F.3d 643 (6th Cir. 2008) (where, although court revoked abandonment due to a change in lien avoidance law, it acknowledged in general that the "strong policy of finality should accompany any abandonment").

Second, maximum and equitable distribution to creditors is at the core of bankruptcy policy. *In re McGrath* 621 B.R.260, 266 (Bankr. D. N. M. 2020). The court's decision to set aside the revocation of abandonment of the Abilify Claim does not violate this policy  This is not a case where the debtor will receive a windfall of settlement proceeds after having received a discharge of his debts.  The debtor's discharge has been revoked.  The debtor continues to owe his creditors regardless of whether the settlement proceeds are administered within the bankruptcy case through the trustee or outside the bankruptcy where there will be no trustee administrative fees.

Accordingly, the debtor's Rule 9024 motion is GRANTED and the Court's April 9, 2020 order is SET ASIDE.  The Rule 6007 notice of abandonment which included the Abilify Claim stands and that asset remains abandoned.

# # #